**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHARLES WASHINGTON

      Plaintiff,

v.

EXPO.COMPANY KIRCHNER
GMBH & CO.KG., a German corporation,

      Defendant.

_____/

CASE NO. 03-72581
HON. LAWRENCE P. ZATKOFF

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 19, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

      This matter is before the Court on Defendant Expo's Motion for Summary Judgment.

Plaintiff has responded and Defendant has replied to the response.  The Court finds that the facts and

legal arguments are adequately presented in the parties' papers and the decision process would not

be significantly aided by oral argument.  Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby

ORDERED that the motion be resolved on the briefs submitted.  For the reasons set forth below,

Defendant's Motion for Summary Judgment is GRANTED, in part, and DENIED, in part.

## II. BACKGROUND

Plaintiff Charles Washington is a journeyman carpenter with 29 years of experience.  On December 16, 2001, Plaintiff was injured when his hand came in contact with an unguarded table saw blade, severing his thumb and index finger from his left hand.  The accident occurred at Cobo Hall while Plaintiff was working on the Volkswagen exhibit in preparation for the Detroit International Auto Show.

Volkswagen hired the Defendant Expo, a German corporation whose owner and president is Herman Kirchner, to construct Volkswagen's display.  Expo also supervised the other subcontractors who were working for Volkswagen on the exhibit.  Plaintiff worked for Convention and Show Services ("CSS"), which provided carpenters to work for Volkswagen at the Auto Show., and worked on the lower level display under CSS carpenter foreman Ed Milne.

In constructing the exhibit, the carpenters used the Festo 220 Volt table saw which had been brought from Germany.  When the Festo 220 malfunctioned, Kirchner ordered worker Dallas Baffa to purchase a 120 volt Rigid table saw.  Baffa purchased the saw from a local Home Depot and set-up the saw on December 15, 2001, the day before the accident.  Baffa asserts that he installed the saw guard at this time, but that later it was removed.  David Washington, Plaintiff's brother, and another carpenter working on the scene asserts that he saw Baffa assemble the saw without the guard.  It is undisputed that, at the time of the accident, the guard was not on the saw.

On December 16, 2001, Tim Hudgins and a carpenter named Chris were assigned to use the saw to cut some laminated wood.  Chris cut his hand while working on the saw and Plaintiff was assigned to assist Hudgins on the project.  While Hudgins was cutting a piece of wood, the wood

jammed and kicked back, sending it flying through the air.[1]  In order to protect himself, Plaintiff swung his hand in the air toward the flying piece of wood.  Plaintiff's hand glanced across the saw blade, thereby severing the thumb and index finger of his left hand.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56©).  A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477

---

[1] The actual facts of the accident are in dispute.  Plaintiff asserts that Hudgins was cutting the wood and Plaintiff was assisting by collecting the wood after it was cut.  Hudgins asserts that Washington was cutting the wood and Hudgins was assisting.

3

U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt

as to the material facts.  It must present significant probative evidence in support of its opposition

to the motion for summary judgment in order to defeat the motion for summary judgment.  *See*

*Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).


## IV.  ANALYSIS

### A. Count 1 – Vicarious Liability

Count I of Plaintiff's Complaint asserts that Defendant Expo should be held vicariously

liable for the negligence of its "employee/agent and/or servant or representative who assembled the

Rigid table saw."  *See* Plaintiff's 3rd Amended Complaint, ¶ 18.

When the Festo 220 table saw broke down, Herman Kirchner of Expo ordered Dallas Baffa

to purchase and assemble the Rigid table saw.  The relationship between Baffa and Expo is essential

to the determination of Plaintiff's vicarious liability claim against Expo.  Though employers may

be held liable for the negligent acts of their employees, they are generally not held liable for the

negligent acts of their independent contractors.  *See Bosak v. Hutchison*, 422 Mich. 712, 724 ("The

inherently dangerous activity doctrine is an exception to the general rule that an employer of an

independent contractor is not liable for the contractor's negligence or the negligence of his

employees.").  Accordingly, for Plaintiff's claim of vicarious liability to succeed, Plaintiff must

direct the court to evidence that Baffa was an employee of Expo and not an independent contractor.

In his deposition, Baffa explained his relationship with Expo.  Baffa is a field supervisor for

Expo Technique.  *See* Plaintiff's Response Brief, Exhibit 5, at 4.  In 2001, he was hired by Herman

Kirchner of Defendant Expo Company to work at the Detroit Auto Show.  *Id*. at 6.  Baffa acted as

4

a runner and a supervisor, taking his instructions from either directly from Herman Kirchner, or from George Bosancic, who also was working for Expo Company. *Id*. at 6-7.

Based on this evidence, it appears to the Court that Baffa was acting as an employee of Defendant Expo. Accordingly, Expo may be held vicariously liable for any negligence of its employee, Dallas Baffa in purchasing and setting up the Rigid table saw. Whether Baffa attached the guard when he assembled the table saw and, if he did not, whether he acted reasonably are questions of fact for the jury to determine. For these reasons, Defendant's Motion for Summary Judgment as to Count 1 is denied.

**B. Count 2 – Direct Liability**

Count 2 of Plaintiff's Complaint asserts direct liability of Defendant Expo for failing in its "duty to exercise reasonable and prudent care in hiring, training and supervising its employees, agents and/or servants, including the individual who assembled the Rigid table so, so as to ensure that its employees are qualified and competent to set up table saws, and so as to ensure that said employees who, in assembling table saws, did so in a reasonably prudent manner, so as to install all necessary safety devices on said saw." *See* Plaintiff's Complaint, ¶ 23.

Plaintiff has failed to present the Court with any evidence supporting its claim of negligent hiring, training, and supervising. Furthermore, the Court is unaware of any authority supporting a duty to train employees to competently set up table saws. For these reasons, and as a matter of law, the Court dismisses Count 2 (Direct Liability) of Plaintiff's Complaint.

**C. Count 3 –  Retained Control and Common Work Area Liability**

The general rule is that property owners and general contractors are not liable for the negligence of their independent subcontractors. *See Ormsby v. Capital Welding*, 471 Mich. 45, 55-

5

56 (2004). The two exceptions to this rule are (1) where the work is inherently dangerous, *see Bosak v. Hutchison*, 422 Mich. 712 (1985), and (2) the common work area and retained control doctrines. *See Funk v. Gen. Motors Corp.*, 392 Mich. 91 (1974). The first exception does not apply to the present facts following *Deshambo v. Nielsen*, 471 Mich. 27 (2004) (holding that the inherently dangerous activity exception to the general rule that landowner who hired independent contractor was not liable for injuries that the contractor negligently caused did not apply to employee of independent contractor). Count 3 of Plaintiff's Complaint asserts liability under the second exception, the doctrines of common work area and retained control. The doctrines of common work area and retained control were recently explained by the Michigan Supreme Court in *Ormsby v. Capital Welding*, 471 Mich. 45, 55-56 (2004):

> The doctrines of "common work area" and "retained control" are not two distinct and separate exceptions. Rather, under the "common work area doctrine," a general contractor may be held liable for the negligence of its independent subcontractors only if all the elements of the four-part "common work area" test set forth in *Funk* have been satisfied. Further, the "retained control doctrine" is subordinate to the "common work area doctrine" and simply stands for the proposition that when the "common work area doctrine" would apply, and the property owner has stepped into the shoes of the general contractor, thereby "retaining control" over the construction project, that owner may likewise be held liable for the negligence of its independent subcontractors.

Because the present case involves a general contractor and not a property owner, the subordinate "retained control doctrine" is not applicable. Accordingly, the Court will only analyze Plaintiff's claim of common work area liability.

In order to establish common work area liability, Plaintiff must show "(1) that the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. *See id*. at 57. The Court will address

6

each factor individually.

### 1. Reasonableness of Supervising Contractor's Actions

Dallas Baffa explained in his deposition that Herman Kirchner of Expo "would give supervision or information pertaining to how the installation process might be best, the best way to build the exhibit or the knowledge that he has had from previous auto shows." *See* Plaintiff's Brief, Exhibit 5, at 30. Based on this and other undisputed evidence, the Court believes Defendant Expo was acting as a supervising contractor. Whether Expo acted reasonably in its supervisory capacity is a question for the jury.

### 2. Whether there were Readily Observable and Avoidable Dangers

Plaintiff asserts that the lack of a guard on the table saw was a readily observable and avoidable danger. The Court agrees that, at the very least, this is a question of fact for the jury. The Court finds it plausible to believe that the accident could have been avoided had the table saw's guard been attached to the saw. Additionally, the absence of the guard from the saw is something that a jury could find to have been "readily observable."

### 3. Whether there was a High Degree of Risk to a Significant Number of Workmen

Michigan courts have broadly interpreted the "significant number of workmen" requirement of *Funk v. General Motors.* In *Erickson v. Pure Oil Co.*, 72 Mich. App. 330, 337 (1976), the court explained that "[a]ll that is required is that two or more subcontractors will eventually work in the same area of the construction site." *See also Johnson v. Turner Construction Co.*, 198 Mich. App. 478, 481 (1993). Plaintiff has met this requirement by showing that Plaintiff Charles Washington and co-workers Tim Hudgins, "Chris," and others had been using the saw.

### 4. Whether the Accident Occurred in a Common Work Area

7

Plaintiff asserts that the accident occurred in a common work area.  For support, it directs the Court to Herman Kirchner's deposition testimony, which indicates that the table saw where the accident occurred was set up in a hallway of the lower exhibit hall at Cobo Hall, and that the hallway was used by a number of different contractors.  *See* Plaintiff's Brief, Exhibit 2, at 79-80.  Though the hallway where the accident occurred appears to the Court to be a common work area, the Court believes the more relevant question is whether the table saw itself constituted a common work area.

In *Funk v. General Motors Corp.*, 392 Mich. 91 (1974), the seminal Michigan case for common work area liability, a plumber was injured when he fell thirty feet from a roof while working at a General Motors construction site.  Despite the fact that the plumber was working under the supervision of a plumbing subcontractor, the Michigan Supreme Court extended Michigan tort law to impose a duty on General Motors as the general contractor to provide reasonable safety precautions for common work areas.

In the wake of *Funk*, Michigan courts have imposed liability under the common work area doctrine in a variety of situations.  *See Plummer v. Bechtel Construction Co.*, 440 Mich. 646 (1992) (where a subcontractor's employee fell from a catwalk and was injured); *see also Erickson v. Pure Oil Co.*, 72 Mich. App. 330 (1976) (where an iron worker fell off the roof of a construction site).  Nevertheless, the Court is unaware of any case where the courts have found a tool work station to be a common work area.  This Court is not inclined to further extend the common work area doctrine to include such an area.

The rationale of *Funk* and its progeny is that it is sometime appropriate to require general contractors to provide safety precautions for common work areas in order to promote the public policy reason of increased work-site safety.  *See Plummer v. Bechtel*, 440 Mich. at 668 ("The

8

common work area formulation sought to distinguish between a case where it was appropriate to impose overall safety responsibility on the general contractor and one where it would not be appropriate.").  With this rationale in mind, the Court believes that it is not appropriate to impose liability in the present case.

Plaintiff has not presented the Court with any evidence showing that Defendant Expo controlled the table saw where Plaintiff was injured.  Instead, the evidence before the Court suggests that Plaintiff's employer CSS supervised the carpentry and controlled the table saw.  CSS foreman Ed Milne explained in his deposition that CSS's policy, since it is a union, is that "[Expo] can't touch tools or fabricate anything, run equipment."  *See* Defendant's Brief, Exhibit J, at 11.  Furthermore, Milne explained that he was in charge of assigning the carpenters and to make sure that only the carpenters were doing the work. *See id.*   Based on these facts, CSS was in the best position to prevent the injury and to safeguard its workers.

Because *Funk's* rationale for extending liability to the general contractor does not exist in the present case, the Court does not believe it is appropriate to extend the "common area" doctrine to require general contractors to provide safety precautions for the tools used by the employees of their subcontractors.  For these reasons, Count 3 of Plaintiff's Complaint (Retained Control and Common Work Area Liability) should be dismissed.

## V. CONCLUSION

For the above reasons, the Court HEREBY GRANTS Defendant's Motion for Summary Judgment as to Counts 2 (Direct Liability) and 3 (Retained Control and Common Work Area Liability) of Plaintiff's Complaint. The Court HEREBY DENIES Defendant's Motion for Summary Judgment as to Count 1 (Vicarious Liability).

IT IS SO ORDERED.


s/Lawrence P. Zatkoff_____
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  October 19, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 19, 2005.


s/Marie E. Verlinde_____
Case Manager
(810) 984-3290

10