UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES WASHINGTON,

    Plaintiff,

v.

CASE NO. 03-72581
HON. LAWRENCE P. ZATKOFF

EXPO COMPANY GmbH & CO. KG.,
a German corporation, and HERMAN
KIRCHNER,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 18, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for the Entry of a Default Judgment (Dkt. #58), Defendant Expo Company's ("Expo") Motion to Set Aside an Entry of Default (Dkt. #72), and Defendant Expo's Motion to Stay (Dkt. #71). The parties have each responded to the other's respective motions and presented oral argument on September 18, 2007. In addition, the Court took testimony from Plaintiff following his original motion for entry of default on January 17, 2006. For the reasons set forth below, Plaintiff's Motion for the Entry of a Default Judgment will be GRANTED and Defendant Expo's motions will be DENIED.

**II. BACKGROUND**

**A. Factual Background Leading to Entry of Default**

Plaintiff Charles Washington is a journeyman carpenter with 29 years of experience. On

December 16, 2001, Plaintiff was injured when his hand came in contact with an unguarded table saw blade, severing his thumb and index finger from his left hand. The accident occurred at Cobo Hall while Plaintiff was working on the Volkswagen exhibit in preparation for the Detroit International Auto Show.

Volkswagen hired Defendant Expo, a German corporation whose owner and president is Hermann Kirchner, to construct Volkswagen's display. Expo also supervised the other subcontractors who were working for Volkswagen on the exhibit. Plaintiff worked for Convention and Show Services ("CSS"), which provided carpenters to work for Volkswagen at the Auto Show, and worked on the lower level display under CSS carpenter foreman Ed Milne.

In constructing the exhibit, the carpenters used the Festo 220 Volt table saw which had been brought from Germany. When the Festo 220 malfunctioned, Kirchner ordered worker Dallas Baffa to purchase a 120 volt Rigid table saw. Baffa purchased the saw from a local Home Depot and set-up the saw on December 15, 2001, the day before the accident. Baffa asserts that he installed the saw guard at this time, but that later it was removed. David Washington, Plaintiff's brother, and another carpenter working on the scene asserts that he saw Baffa assemble the saw without the guard. It is undisputed that, at the time of the accident, the guard was not on the saw.

On December 16, 2001, Tim Hudgins and a carpenter named Chris were assigned to use the saw to cut some laminated wood. Chris cut his hand while working on the saw and Plaintiff was assigned to assist Hudgins on the project. While Hudgins was cutting a piece of wood, the wood jammed and kicked back, sending it flying through the air. In order to protect himself, Plaintiff swung his hand in the air toward the flying piece of wood. Plaintiff's hand glanced across the saw blade, thereby severing the thumb and index finger of his left hand.

The Court scheduled a Final Pre-Trial Conference for January 17, 2006, and Defendant Expo

failed to appear. The Court permitted Plaintiff to move for a default. The Court granted the motion for default and permitted Plaintiff to offer testimony regarding his injury and the amount of damages.

**B. Factual Background Since the Entry of Default**

Expo is a German limited partnership, and is the successor company to Expo Company Kirchner GmbH & Co.KG.[1] At the time Plaintiff added Expo as a Defendant in this case, Hermann Kirchner was the sole member of the limited liability company "Expo Company Kirchner GmbH & Co.," and also the limited partner "KG" that comprised Expo. In March, 2006, Hermann Kirchner transferred his interests in the limited liability company and his interest in the limited partnership to Mario Muroni. As part of the deal, Muroni agreed to assume all of the liabilities of Expo. Muroni also changed the name of the company to Expo Company GmbH & Co.KG.

On or about March 15, 2006, Uwe Brinkmann, a creditor of Expo, filed an application for the opening of insolvency proceedings against Expo. The Local District Court in Aachen, Germany with jurisdiction over insolvency proceedings (the "Local District Court") issued an Order dated March 24, 2006, which directed Dr. Frank Kebekus to examine the financial records of Expo, and make a report back to the Court concerning its viability.

Dr. Kebekus accepted the Court's appointment, and on March 27, 2006, the Local District Court appointed him the preliminary insolvency administrator, and he began his investigation of Expo. Under German law, once the Local District Court authorizes the application for insolvency

---

[1]The abbreviation "KG" stands for"*Kommanditgesellschaft,*" which is one partner of the partnership who is liable for a fixed amount much like a limited partner ("*Kommanditist*") under Michigan law. There is also a partner with unlimited liability (in German: "*Komplementär*") like a general partner under Michigan law. A "GmbH & Co.KG" is distinguished from a KG because it has a limited liability company ("GmbH**")** as general partner. The partner whose liability is fixed to a certain amount, the "*Kommanditist,*" is normally an individual.

3

proceedings against a debtor, an automatic stay goes into immediate effect pursuant to German Civil Procedure Code Section 240 ZPO, which precludes any type of civil action to proceed against the insolvent debtor. The stay remains in effect until the Local District Court closes the case.

After Dr. Kebekus made his investigation and recommendation to the Local District Court that insolvency administration was appropriate for Expo, the Local District Court appointed him insolvency administrator for Expo on June 6, 2007. Dr. Kebekus did not have any knowledge of Plaintiff's claim until August 1, 2007, when he was served with process from Plaintiff's counsel, because Kirchner had not disclosed the suite to him. Once served with the Charles Washington lawsuit and Motion for Entry of Default Judgment, Dr. Kebekus contacted counsel in the United States to represent Expo's interest in this litigation.

Plaintiff's Fourth Amended Complaint adds a claim against Kirchner as an individual based on a theory of piercing the corporate veil. Kirchner has not responded to the complaint and a separate default has been entered against him. Plaintiff now requests that the Court enter default judgment in his favor pursuant to Fed. R. Civ. P. 55 for Defendant Expo's failure to appear at the Final Pre-Trial Conference as ordered. Specifically, Plaintiff seeks a judgment of $1.3 million in damages. Defendant Expo opposes the entry of a default judgment and has filed a motion pursuant to Rule 55(c) to have the entry of default set aside.

### III. DISCUSSION

**A. Defendant's Motion to Set Aside the Default**

*1. Legal Standard*

An entry of default may be set aside under Rule 55(c) for "good cause shown." Fed. R. Civ. P. 55(c). "This requires the moving party to provide an explanation for the default or to give reasons why vacation of the default entry would serve the interests of justice." 10A Charles Alan Wright,

4

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2296 at 141 (3d ed. 1998). The standard for setting aside an entry of default requires the weighing of three factors: (1) whether Plaintiff will be prejudiced by setting aside the default judgment, (2) whether Defendant has a meritorious defense to the action, and (3) whether culpable conduct on the part of Defendant led to the default. *See Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); *Shepard Claims Service, Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986).

### *2. Whether Plaintiff will be prejudiced*

In order to constitute prejudice, "[t]he delay must result in tangible harm, such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996). "Mere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice" to warrant denying a motion to set aside a default. *United Coin Meter Co. v. Seaboard C. Railroad*, 705 F.2d 839, 845 (6th Cir. 1983) (deciding motion to set aside a default judgment).

The Court finds that Plaintiff will be substantially prejudiced by setting aside the default in this case. Plaintiff has diligently pursued his claim for nearly five years and has spent thousands of dollars in litigation costs and attorney fees. While delay alone is not sufficient to constitute prejudice, the Court finds that there is more than mere delay in this case. Plaintiff has not simply waited for his opportunity to present his case to a jury; rather, Plaintiff has spent over a year and half attempting to obtain service on a foreign company and its former owner, which has required countless costs, several motions to adjourn, and extreme difficulty. Importantly, these costs have all occurred following Defendant Expo's default on the eve of trial. That is, this case had been fully litigated and was about to proceed to trial when Plaintiff was forced to incur all of these unnecessary cots. Requiring Plaintiff, at this point, to attempt to litigate further against a company and foreign

national that have continually evaded litigation would result in undue prejudice to Plaintiff.

### 3. *Whether Defendant has a meritorious defense*

Plaintiff concedes and the Court finds that Defendant has a meritorious defense. Prior to entering the default against Defendant, the Court ruled on Defendant's Motion for Summary Judgment. The Court granted the motion in part, finding that no issues of fact existed as to Plaintiff's claims based on direct liability and common work area liability, and denied the motion in part, finding an issue of fact precluded summary judgment as to Plaintiff's claim based on vicarious liability. The claim of vicarious liability is the only claim remaining before the Court as to Defendant Expo. In its Opinion, the Court stated:

> Based on this evidence, it appears to the Court that Baffa was acting as an employee of Defendant Expo. Accordingly, Expo may be held vicariously liable for any negligence of its employee, Dallas Baffa in purchasing and setting up the Rigid table saw. Whether Baffa attached the guard when he assembled the table saw and, if he did not, whether he acted reasonably are questions of fact for the jury to determine. For these reasons, Defendant's Motion for Summary Judgment as to Count 1 is denied.

Dkt. #38 at 5. Consistent with this finding, the Court concludes that Defendant has a meritorious defense.

### 4. *Whether Defendant's culpable conduct caused the default*

"To be treated as culpable [for purposes of setting aside a default], the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard*, 796 F.2d at 194. "Clearly, however, the court may refuse to set aside a default ... where the defendant offers no excuse at all for the default." *Id.* at 194-95 (quoting 6 Moore's Federal Practice ¶ 55.01[2] at 55-61, 62 (1985 ed.)). In the present case, Defendant contends that the reason it failed to appear at the Final Pre-Trial Conference on January 17, 2006, was that it did not have a representative in the United States to receive notice of the

conference. In support of its position, Defendant points to the fact that the Court permitted its attorney to withdraw from the case based on a Consent Order on January 3, 2006.

The Court finds Defendant's excuse unpersuasive and is, for all intents and purposes, no excuse at all for the default. *See id.* at 194-95; *accord E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990) (refusing to set aside default where defendant offered no meaningful reason for default). While the Court finds that Defendant has acted diligently upon being notified of the default and served with Plaintiff's Fourth Amended Complaint, the relevant inquiry for purposes of the present motions is whether any culpable conduct by Defendant led to the default itself. *See Bethelsen*, 907 F.2d at 620 (stating "the court must examine whether culpable conduct of the defendant *led to the default*"). Thus, whether Defendant has been diligent since being notified of the default is irrelevant. What matters is why Defendant failed to appear at the Final Pre-Trial Conference as ordered. *See id.*

The Consent Order Defendant relies on was entered into with the consent of Defendant Expo's President, Hermann Kirchner. Most importantly, however, the Consent Order Kirchner signed and consented to expressly orders the parties to appear at the Final Pre-Trial Conference on January 17, 2006, at 2:00 p.m.[2] *See* Dkt. #46. Further, Kirchner had been apprised of the lawsuit for over a year at the time he entered into the consent judgment and was aware that the Court had denied Defendant Expo's motion for summary judgment in part. Thus, Kirchner knew that the case was going to trial unless it settled. Therefore, Defendant Expo's President had actual notice of the Final

---

[2]At oral argument, counsel for Defendant argued that the Court should excuse Defendant's failure to appear because the Consent Order lists the date of the Final Pre-Trial Conference as January 17, 2005, rather than January 17, 2006. The Court is not persuaded. Kirchner signed the order in December 2005, after the Court had ruled on Defendant's Motion for Summary Judgment, and the date set in the order is an obvious typographical error as it would have been impossible to order an appearance on January 17, 2005.

7

Pre-Trial Conference and Defendant has provided no reason for its failure to appear as ordered. *See Greater St. Louis Constr. Laborers Welfare Fund v. Little*, 182 F.R.D. 592 (E.D. Mo. 1998) (finding that corporation had actual notice of lawsuit where corporation's officers had been served with the summons and complaint and corresponded with the plaintiff's attorney regarding the suit). As such, any argument that Defendant's failure to appear was due to lack of notice is without merit. *See Conetta v. National Hair Care Centers, Inc.*, 186 F.R.D. 262 (D.R.I. 1999), *aff'd*, 236 F.3d 67 (1st Cir. 2001).

In addition to Defendant's deliberate failure to appear at the Final Pre-Trial Conference, Kircher's conduct following the default leads the Court to believe that he has intentionally evaded judicial proceedings. Shortly after the Court entered a default in Plaintiff's favor, Kirchner returned to Germany and sold his company, which then became insolvent. This type of conduct evidences a deliberate attempt to deprive Plaintiff of his day in court.

In sum, the Court finds that Plaintiff will be substantially prejudiced if the Court granted Defendant's motion and that the default was caused by culpable conduct on the part of Defendant Expo. Therefore, Defendant's motion to set aside the default is denied.

**B. Plaintiff's Motion for Entry of a Default Judgment**

In light of the Court's disposition of Defendant's Motion to Set Aside the Entry of Default, the Court grants Plaintiff's Motion for Entry of a Default Judgment as to Defendant Expo. The Court's authority to enter a judgment in default and dismiss a case is inherent in the court's vested power to manage the orderly administration of justice. *See Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962). Thus, the decision to enter a default judgment is left to the sound discretion of the Court. *See id.*; 10A Wright, Miller & Kane, Federal Practice & Procedure § 2685.

Having found that Plaintiff will be substantially prejudiced if the Court's entry of default

were set aside and that the entry of default was the direct result of Defendant's culpable conduct, the Court concludes that entry of a default judgment is appropriate in this case. As stated above, Plaintiff has not been subjected to mere delay in this case but has expended substantial time and money attempting to pursue his case since the Court entered a default against Defendant. Moreover, Defendant's failure to appear at the Final Pre-Trial Conference as ordered, despite actual knowledge of the date and time, is precisely the type of deliberate and willful disregard of the Court's authority that merits a default judgment. Further, having heard Plaintiff's testimony regarding the nature of his injuries and the amount of damages, and finding Plaintiff's testimony highly credible and accurate, the Court finds that Plaintiff is entitled to damages in the amount of $1,030,000.00. Finally, the Court notes that Defendant Kirchner has not been served with a notice of his most recent default, which is a prerequisite to the entry of a default judgment against him individually. Fed. R. Civ. P. 55(b)(2). Therefore, the Court cannot enter a judgment against Kirchner at this time and Plaintiff is free to pursue his claims against Kirchner as he sees fit. Consequently, Plaintiff's Motion for Entry of a Default Judgment is granted as to Defendant Expo.

**C. Defendant's Motion to Stay**

Defendant has also filed a Motion to Stay the case pending the resolution of bankruptcy proceedings in Germany. Like United States bankruptcy law, a German insolvency proceeding also grants a debtor in a bankruptcy proceeding an automatic stay of all other pending legal matters. Thus, Defendant argues that the Court should stay these proceedings in accordance with German law based on principles of comity.

A federal court has the inherent discretion to stay the proceedings before it. *See Landis v. North American Co.*, 299 U.S. 248 (1936). Under the principle of international comity, a federal court should give effect to executive, legislative, or judicial acts of another nation. *See Philadelphia*

*Gear Corp. v. Philadelphia Gear de Mexico*, 44 F.3d 187, 191 (3d Cir. 1994). Federal courts have extended comity to foreign bankruptcy proceedings. *See id.*; *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987). The Court should recognize the foreign bankruptcy proceeding so long as "the foreign bankruptcy laws comport with due process and fairly treat the claims of local creditors." *Victrix*, 825 F.2d at 714. A party seeking a stay of judicial proceedings based on a foreign bankruptcy proceeding must show that "(1) the foreign bankruptcy court shares our policy of equal distribution of assets; and (2) the foreign law mandates the issuance or at least authorizes the request for the stay." *Philadelphia Gear*, 44 F.3d at 193. The foreign law need not be identical to the United States' bankruptcy laws but must not be repugnant to American laws and policies. *In re Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y 1996). However, "[c]omity should be withheld ... when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Philadelphia Gear*, 44 F.3d at 191 (quoting *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971)). "It is also well established ... that orders of foreign courts are not entitled to comity if the litigants who procure them have 'deliberately courted legal impediments' to the enforcement of a federal court's orders." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60-61 (2d Cir. 2004) (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 208-209 (1958)).

In this case, Defendant has shown that German bankruptcy law shares our policy of equal distribution of assets and mandates the request for a stay. *See* Def.'s Ex. A; *Hembach v. Quikpak Corp.*, No. 97-3900, 1998 WL 54737 at *2-3 (E.D. Pa. Jan. 8, 1998) (extending comity to German insolvency proceeding). Consequently, the Court must consider whether to extend comity to the German bankruptcy proceeding and stay the case. *See Philadelphia Gear*, 44 F.3d at 194-95. Based on the Court's finding that Defendant's culpable conduct caused the default to be entered and the

circumstances surrounding the bankruptcy proceeding in Germany, the Court declines to stay the case based on comity.

In *Motorola*, *supra*, the district court refused to recognize injunctions the defendants obtained in Turkey where there was a showing that in obtaining the injunctions the defendants deliberately violated court orders enjoining the transfer of defendants' shares in their family corporation and conspired to obstruct the court's jurisdiction. *See Motorola*, 388 F.3d at 60. In that case the district court found that "the distributors [of defendants' shares] had no apparent motive to enjoin the transfer of Telsim shares; that the distributors enjoyed a very close relationship with the [defendants]; that the timing of the filings in Turkey suggested that they were intended to thwart the District Court's proceedings just before the Court ruled on the preliminary injunction motion; that the suits in Turkey were nearly identical even though they were purportedly filed by different parties; and that the defendants' responses to the distributors' lawsuits were so pathetic that they actually indicated support for the suits." *Id.* at 60. Based on these findings, the Second Circuit found that the district court did not abuse its discretion when it refused to acknowledge the Turkish injunctions.

As explained above, Defendant's failure to appear at the Final Pre-Trial Conference amounted to a willful disregard of the Court's authority. Thus, to defer jurisdiction in this matter would be tantamount to excusing Defendant's deliberate disregard of the Court's orders. Such disregard is inimical to our strong national interest in preserving the authority of the courts over matters pending before them and our notions of justice. In addition, Defendant Kirchner's conduct, can justifiably be construed as an attempt to avoid liability. Kirchner was the limited partner in Expo and the sole owner of Expo's general partner, which in turn was a limited liability company. Shortly after Expo failed to appear at the Final Pre-Trial Conference, Kirchner sold all of his interest in Expo

and a German creditor subsequently initiated the bankruptcy proceedings against the company. Similar to *Motorola*, the timing of Kirchner's default and the initiation of the German insolvency proceedings suggests an attempt to thwart the Court's proceedings immediately prior to a trial before a jury. As in *Motorola*, Kirchner deliberately courted legal impediments to the enforcement of the Court's orders and jurisdiction. These circumstances, coupled with the fact that Defendant ignored the Court's order to appear at the Final Pre-Trial, lead the Court to conclude that comity should be withheld in this case. Therefore, Defendant's Motion to Stay is denied.

## IV. CONCLUSION

Based on the foregoing analysis,

IT IS ORDERED that Plaintiff's Motion for Entry of Default Judgment is GRANTED as to Defendant Expo and that a Judgment will be entered in Plaintiff's favor in the amount of $1,030,000.00.

IT IS FURTHER ORDERED that Defendant's Motion to Set Aside Entry of Default and Motion to Stay are DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: September 18, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 18, 2007.

s/Marie E. Verlinde

Case Manager
(810) 984-3290